**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MARYROSE THILL, | Case No. 23-cv-3626 (LMP/JFD) |
| Plaintiff, | |
| v. | **ORDER GRANTING** |
| | **DEFENDANT'S MOTION FOR** |
| 3M COMPANY, | **SUMMARY JUDGMENT** |
| Defendant. | |

Francis H. White, III, **Francis White Law PLLC, Woodbury, MN**; and Lexis Anderson, **Barnes Law, LLP, Los Angeles, CA**, for Plaintiff.

Patrick R. Martin, **Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Minneapolis, MN**; and Jennifer L. Pacicco, **Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Philadelphia, PA**, for Defendant.

In October 2021, Defendant 3M Company began requiring its employees to be vaccinated against COVID-19.  One of those employees, Plaintiff MaryRose Thill, requested a religious exemption from 3M's requirement to receive a COVID-19 vaccine, which 3M denied.  3M offered Thill a potential reassignment to a position that would not require her to be vaccinated, but Thill declined that reassignment.  3M then terminated Thill when she refused to receive a COVID-19 vaccine.

Thill brought suit against 3M, asserting that 3M violated Title VII of the Civil Rights Act of 1964 and the Minnesota Human Rights Act ("MHRA") by failing to accommodate her religious beliefs.  *See* ECF No. 1.  3M now moves for summary judgment. ECF No. 48. For the following reasons, 3M's motion is granted, and the complaint is dismissed with prejudice.

1

**BACKGROUND**[1]

***Factual Background***

Thill was hired by 3M in August 2021 as an Activation Marketer.  ECF No. 51-2 at 3.  In that role, Thill supported 3M sales representatives in selling healthcare products to hospitals and clinics.  ECF No. 51-1 at 57:11–59:22, 71:3–14; ECF No. 51-6 ¶ 2.  At the time that she started her role, Thill was not required to meet with customers in person because of the ongoing COVID-19 pandemic.  ECF No. 51-1 at 66:5–25.  However, 3M considered Thill's role a "customer-facing" role, and in the absence of COVID-19 restrictions, 3M expected Activation Marketers to visit hospitals and clinics to educate these customers on 3M products and receive feedback on the customers' existing 3M products.  ECF No. 51-6 ¶¶ 6–8.

In October 2021, 3M announced it would require employees to receive a COVID-19 vaccine pursuant to a federal mandate for government contractors like 3M.  ECF No. 51-2 at 18.  3M offered its employees the option to apply for a medical or religious exemption from the vaccination requirement.  *Id.* at 19.

On November 2, 2021, Thill submitted a religious exemption request to 3M.  ECF No. 51-2 at 26–28.  In her request, Thill explained that she sought an exemption "based on [her] deeply held religious beliefs pursuant to [her] reliance on teachings in the Holy Bible."  *Id.* at 26.  In further explaining her religious objection to vaccination, Thill wrote:

> Where scripture does not expressly instruct on a particular matter, I believe that I am required to search the Scripture myself for related truths

---

[1]   This factual background includes only the undisputed facts in the summary-judgment record.  Disputed facts are noted as such.

(Romans 15:4) and to seek personal guidance from the Holy Spirit (Acts 2:38-39; Romans 8). If I fail to submit to the personal convictions that the Holy Spirit and Scripture has impressed upon me, I will be sinning against God. I have personally searched the Scripture and sought guidance from the Holy Spirit to come to my decision. The Bible states that the body is the Temple of the Holy Spirit. We are commanded to take good care of it, not to defile it, and certainly not introduce something into it that could potentially harm it (1 Corinthians 3:16–17, 1 Corinthians 6:19–20, 2 Corinthians 5:10, and 2 Corinthians 7:1). The Bible also outlines the fact that God created the body both "fearfully and wonderfully." (Psalm 139:13–16). I believe the COVID-19 shots alter what God made (literally assuming the position of God), which I believe to be a sinful practice under these circumstances. These vaccines (by the very disclosure of the vaccine manufacturers) contain carcinogens, neurotoxins, animal viruses, animal blood, allergens, and heavy metals. As the COVID-19 shots are still in the early phases of study, I do not believe it would be right for me to introduce these substances into my body because they have not sufficiently been proven to me to be safe and effective. The Bible states, "I know and am persuaded in the Lord Jesus that nothing is unclean in itself, but it is unclean for anyone who thinks it unclean." and "But whoever has doubts is condemned if he eats, because the eating is not from faith." (Rom. 14) I believe—through prayer, conviction and great faith as a Christian, these vaccines are harmful to my body.

*Id.* at 27. In her religious exemption request, Thill also cited various statistics that purportedly demonstrated the inefficacy and harmfulness of COVID-19 vaccines, including that the vaccines had caused "15,386 deaths and 726,963 adverse events" and had "only an 84–86% efficacy rate." *Id.*

3M sent Thill several follow-up questions in response to her religious exemption request. *Id.* In response to 3M's question about how Thill's belief that her body was a temple was a religious belief that influenced her view on vaccines, Thill explained:

1 Corinthians 6:19–20 states, "Have you forgotten that your body is now the sacred temple of the Spirit of Holiness, who lives in you? You don't belong to yourself any longer, for the gift of God, the Holy Spirit, lives inside your sanctuary. You were God's expensive purchase, paid for with tears of blood, so by all means, then, use your body to bring glory to God!"

3

. . .

> All things couldn't possibly be written into one book.  In this case, vaccinations are not included in the Bible, as the first vaccination wasn't released into the market until well after the Bible was already written.

. . .

> In circumstances where modern technologies and current cultural themes are of question, like vaccinations, the Bible leads followers to go to the Holy Spirit for direction (1 Thessalonians 5:19–21).  As stated in my first response, I am personally convicted by the Holy Spirit's guidance that I should not receive any of the three COVID-19 shots presently available.

*Id.* at 55.  In response to 3M's question about how Thill puts her belief that her body is a temple into practice, Thill wrote that she is conscious about what she wears, and that she gives 10% of her income to her church, leads local Bible studies, eats healthy, exercises regularly, and does not put "harmful toxins, pesticides, or chemicals" into her body.  *Id.*

3M also noted that Thill's religious exemption request "appear[ed] to borrow, in whole or in part, language from one or more template accommodation requests that can be found on the Internet," and asked Thill to put her exemption request in her own words.  *Id.* at 56.  Thill responded that "[g]iven that [3M is] reviewing presumably hundreds or thousands of exemption requests for the same or similar reasons, would [3M] not expect them to sound somewhat similar?"  *Id.*  Thill asked for clarification about what language "in whole or in part" that 3M was challenging and affirmed that she "used [her] own words in my deeply and sincerely held religious belief."  *Id.*

The federal vaccination mandate for government contractors was blocked by a federal court in December 2021, so 3M did not initially decide Thill's religious exemption request.  ECF No. 51-1 at 125:16–126:22.  However, in January 2022, the U.S. Centers for

4

Medicare and Medicaid Services ("CMS") issued a rule requiring workers at Medicare and Medicaid-certified healthcare facilities to receive the COVID-19 vaccine. ECF No. 51-2 at 38. On April 18, 2022, Thill was notified that because her position was considered a customer-facing role, she was subject to CMS's rule and was required to receive a COVID-19 vaccine. *Id.* at 41–42. Because of CMS's rule, 3M required Thill to either be vaccinated by May 23, 2022, or obtain an approved medical or religious exemption, or else she would be subject to termination. *Id.* at 42–44.

On April 27, 2022, 3M denied Thill's previously submitted religious exemption request, finding that Thill's request did not meet "the legal standard to qualify for an exemption." *Id.* at 46. Thill was presented with two options. First, Thill was offered the opportunity to apply for a medical exemption. *Id.* at 48. Second, Thill's supervisor, Matt Linabery, worked to find Thill a position within 3M that was not customer-facing and which, accordingly, would not require her to receive a COVID-19 vaccine. ECF No. 51-6 ¶ 16; ECF No. 51-1 at 138:20–139:7. Linabery found a position for Thill within 3M's Separation and Purification Sciences Division ("Purification"), which produced membranes and filters for water purification, and he worked toward creating a new role for Thill in the Purification division that was not customer-facing and would not require vaccination. ECF No. 51-6 ¶ 16. The role in the Purification division had the same salary and job grade as Thill's Activation Marketer role. *Id.*

On May 13, 2022, Linabery texted Thill to "follow[] up on [their] afternoon call," and asked if Thill had "any additional thoughts about the job [they] discussed." ECF No. 51-2 at 51. Thill responded that "[a]fter thinking about it more, I don't think

purification job would be a good fit for me." *Id.* Thill also did not submit a medical exemption request. ECF No. 51-1 at 96:3–9. Accordingly, because Thill did not receive a COVID-19 vaccine and did not have an approved exemption by May 23, 2022, 3M terminated Thill's employment on May 25, 2022. *Id.* at 150:2–4.

***Procedural Background***

After exhausting her administrative remedies and receiving a right-to-sue letter from the Equal Employment Opportunity Commission, ECF No. 1-3, Thill brought this suit on November 27, 2023, *see* ECF No. 1. Thill alleges that 3M's failure to accommodate Thill's religious beliefs—and Thill's termination for refusing to receive the COVID-19 vaccine— constitute religious discrimination in violation of Title VII and the MHRA. *See id.* ¶¶ 84– 116. 3M now moves for summary judgment on all of Thill's claims. ECF No. 48.

## ANALYSIS

Summary judgment is proper if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Riedl v. Gen. Am. Life Ins.*, 248 F.3d 753, 756 (8th Cir. 2001) (citation omitted). At this procedural juncture, the Court does "not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (citation omitted). Additionally, as the non-moving party, Thill "is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record." *Palesch v. Mo. Comm'n on Hum. Rts.*, 233 F.3d 560, 565 (8th Cir. 2000).

As an initial matter, 3M moves for summary judgment on Thill's Title VII and MHRA claims, but provides no individualized briefing on Thill's MHRA claim, instead

6

asserting that it is derivative of Thill's Title VII claim.  ECF No. 50 at 19.  The Court is not so sure that the MHRA is a carbon copy of Title VII, given the textual differences between the statutes.  *See Lee v. Seasons Hospice*, 696 F. Supp. 3d 572, 578–85 (D. Minn. 2023) (considering religious discrimination claims under Title VII and the MHRA separately in a COVID-19 vaccination case).  That said, Thill has not objected to 3M's treatment of her MHRA claim as derivative of her Title VII claim, and she agreed at oral argument that her MHRA claim should be analyzed under the same framework as the Title VII claim.  *See generally* ECF No. 53.  Therefore, to the extent the MHRA claim is distinct from the Title VII claim, Thill has forfeited any individualized consideration of the MHRA claim. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). The Court therefore only considers the merits of Thill's Title VII claim.  *See Riley v. Bondi*, 606 U.S. 259, 273 (2025) ("If a party neglects to raise, concedes, or waives an issue, a court generally has no obligation to consider it.").

## I.    Title VII Claim

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against "any individual . . . because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination on a failure-to-accommodate theory under Title VII,[2] an employee must show: (1) they have a bona fide religious belief that conflicts with an employment requirement; (2) they informed the employer of this belief; and (3) they were disciplined for failing to comply with the requirement. *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 900 (8th Cir. 2024). If the employee makes out this prima facie case, the burden shifts to the employer to prove that it offered the employee a reasonable accommodation or that accommodating the employee's request would have resulted in an undue hardship. *Harrell v. Donahue*, 638 F.3d 975, 979 (8th Cir. 2011).

3M first argues that Thill cannot establish a prima facie case of religious discrimination because she lacks a bona fide religious belief and because she did not inform 3M of her religious beliefs. ECF No. 50 at 20–29. 3M further argues that even if Thill can establish a prima facie case, 3M offered Thill reasonable accommodations and Thill's

---

[2] Thill's complaint could be read to assert both a disparate-treatment claim and a disparate-impact claim. *See* ECF No. 1 ¶ 101 ("Defendant has violated Plaintiff's rights under Title VII by discriminating against her on the basis of her religious beliefs, failing to provide reasonable accommodation, and disparately treating Plaintiff due to her religious beliefs."). Those are indeed distinct claims under Title VII. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015) (explaining that "the only causes of action under Title VII" are disparate impact and disparate treatment). However, in moving to dismiss the entirety of Thill's complaint, 3M construes Thill's complaint to raise only a disparate-treatment claim based on failure to accommodate, *see* ECF No. 50 at 19–36, and Thill does not dispute that framing of her complaint, *see generally* ECF No. 53. Based on the parties' framing of the issues in this case, then, the Court finds that Thill has abandoned any disparate-impact claim that may have been raised in the complaint. *See Satcher*, 558 F.3d at 735; *Riley*, 606 U.S. at 273.

proposed accommodation—remaining unvaccinated—would have posed an undue hardship to 3M. *Id.* at 29–36.

The Court need not decide whether Thill has established her prima facie case because, even if she has, there is no genuine dispute of material fact that 3M offered her a reasonable accommodation.

### a.      Reasonable Accommodation

If an employer reasonably accommodates an employee's religious needs, there is no violation of Title VII. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation.").  If the employer has offered a reasonable accommodation, "the employee cannot insist on a different reasonable accommodation, even if the preferred accommodation would not inflict undue hardship on the employer." *Haliye v. Celestica Corp.*, 717 F. Supp. 2d 873, 879 (D. Minn. 2010); *see Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1031 (8th Cir. 2008).

One way that an employer can accommodate an employee's religious needs is to offer the employee a transfer to a "reasonably comparable position" where conflicts between the employee's job and religious beliefs "are less likely to arise." *EEOC v. Kelly Servs., Inc.*, 598 F.3d 1022, 1031 n.8 (8th Cir. 2010) (quoting *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 500 (5th Cir. 2001)).  Although the Eighth Circuit has not elaborated on what constitutes a "comparable position," other courts have understood this phrase to mean a position that "reasonably preserves the employee's terms, conditions, or privileges of employment." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1276

(11th Cir. 2021); *see Am. Postal Workers Union, S.F. Loc. v. Postmaster Gen.*, 781 F.2d 772, 776 (9th Cir. 1986) (explaining that a reasonable accommodation must "reasonably preserve that employee's employment status, *i.e.*, compensation, terms, conditions, or privileges of employment"); *see also Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 226 (3d Cir. 2000) (explaining that a "lateral transfer" constitutes a reasonable accommodation). That does not mean, however, that the "reasonably comparable position" must perfectly maintain all of the employee's prior terms of employment. *See Bruff*, 244 F.3d at 502 n.23 (holding that the fact that accepting a comparable position would have led to a "significant reduction in salary" does not alone "make the accommodation unreasonable"); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 241 (9th Cir. 1990) (affirming that employer offered employee reasonable accommodation by transferring him to a lower position, albeit with higher pay).

Here, there is no genuine dispute that 3M offered Thill a "comparable position" that would have eliminated the conflict between 3M's vaccination requirement and Thill's religious beliefs and preserved her terms, conditions, and privileges of employment. After 3M denied Thill's religious exemption request, Thill's supervisor offered her a lateral transfer to a non-customer-facing role within 3M's Purification division. ECF No. 51-6 ¶ 16; ECF No. 51-1 at 138:20–139:7. This position would have afforded Thill the same pay and job grade as her Activation Marketer position. ECF No. 51-6 ¶ 16. And because the position in the Purification division did not require Thill to receive a COVID-19 vaccine, it would have eliminated the conflict between 3M's vaccination requirement and Thill's religious opposition to COVID-19 vaccination. *Id.* As a matter of law, then, 3M's

10

offer of a reasonably comparable position satisfied its duty under Title VII to provide a reasonable accommodation. *Kelly Servs.*, 598 F.3d at 1031 n.8.

Thill offers several opposing arguments; none are availing. First, she argues that "the position was never formally offered to [her] in a professional and organized manner that appeared to be a legitimate option." ECF No. 53 at 13. Thill cites no record evidence for this assertion, nor does she provide any authority that a reasonable accommodation must be "formally offered" in a "professional and organized manner." Because neither legal nor record authority supports her assertion, the Court disregards it. *See* Fed. R. Civ. P. 56(c)(1) (stating a party "asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record").

Thill next cites her deposition testimony to assert that "the transfer may not have even been a lateral move, and that the pay grade could have been higher or lower." ECF No. 53 at 13. But that is not what Thill said during her deposition; rather, she stated that she was unsure "one way or another" whether the transfer was lateral, but she accepted that it "could have been lateral."[3] ECF No. 51-1 at 145:1–13. Meanwhile, Linabery, Thill's supervisor, has submitted a declaration confirming that the proposed transfer was indeed lateral, with the same pay and job grade as Thill's Activation Marketer position. ECF No. 51-6 ¶ 16. Those two statements do not conflict: Thill accepted that the transfer could

---

[3]   The Court observes that Thill's brief appears to cite evidence that has not been submitted to the Court. *See* ECF No. 53 at 13–14 (citing page 147 of Thill's deposition, which is not in the record). Thill has therefore forfeited reliance on these portions of Thill's deposition. *See* Fed. R. Civ. P. 56(c)(1)(A) (explaining that a party resisting summary judgment must cite to "particular parts of materials *in the record*" (emphasis added)).

have been lateral, and Linabery confirmed that it was.  Given Linabery's unequivocal declaration, Thill's lack of certainty over whether the transfer was lateral does not create a factual dispute as to whether the transfer "reasonably preserved [her] terms, conditions, or privileges of employment."  *Bailey*, 992 F.3d at 1276; *see To v. U.S. Bancorp*, 651 F.3d 888, 892 n.2 (8th Cir. 2011) ("An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur."); *Thompson v. DiMichele Enters., Inc.*, No. 4:18-cv-00903-LPR, 2020 WL 1285040, at *5 (E.D. Ark. Jan. 3, 2020) (holding that "vague, conclusory, and equivocal" deposition testimony did not create a genuine factual dispute).

Next, Thill protests that the transfer was a "forced career change" that would send her to "an entirely different division and career path."  ECF No. 53 at 3, 13.  Again, Thill cites no record evidence for this assertion, which is insufficient to avoid summary judgment.  *See* Fed. R. Civ. P. 56(c)(1).  In fact, the only record evidence reflecting Thill's reason for turning down the position in the Purification division is her text message to Linabery, in which she states that the position was not a "good fit" for her.  ECF No. 51-2 at 51.  Nevertheless, that 3M's proposed accommodation was not Thill's preferred option does not render it unreasonable.  *See Sturgill*, 512 F.3d at 1031.  And Thill points to no evidence in the record disclosing why the position in the Purification division was not a "good fit" for her.  Having offered Thill a reasonable accommodation, 3M was under no duty to offer a position with a better "fit" for Thill.  *See Wilson v. U.S. W. Commc'ns*, 58 F.3d 1337, 1342 (8th Cir. 1995) ("[A]n employer is not required to select the employee's

12

proposal of reasonable accommodation and . . . any reasonable accommodation by the employer is sufficient to comply with [Title VII].").

Thill next emphasizes that the reasonableness of an accommodation is a fact-intensive inquiry that usually belongs to the jury. ECF No. 53 at 13. That's generally true, *see Sturgill*, 512 F.3d at 1033, but Thill's cited cases highlight why that general rule does not apply here. For example, in *EEOC v. Universal Manufacturing Corporation*, the Fifth Circuit reversed a grant of summary judgment in an employer's favor, explaining that the employee had presented two religious conflicts to her employer but that her employer had only attempted to accommodate one of those conflicts. 914 F.2d 71, 73 (5th Cir. 1990). Here, however, there is no dispute that a transfer to the position in the Purification division would have accommodated Thill's only religious conflict: opposition to receiving a COVID-19 vaccine. ECF No. 51-6 ¶ 16. The same can be said for *Haliye*, in which the court held that there was a genuine factual dispute as to whether an employer's proposed accommodation would have "fully resolved" the plaintiffs' religious conflict. 717 F. Supp. 2d at 877. Ditto for *Maroko v. Werner Enterprises, Inc.*, where one of the employer's proposed accommodations "would have done nothing to eliminate the conflict" and it was questionable whether another proposed accommodation would have resolved the religious conflict. 778 F. Supp. 2d 993, 1002–03 (D. Minn. 2011). Here, it is undisputed that 3M's proposed accommodation would have entirely resolved Thill's religious conflict, so Thill's reliance on *Universal Manufacturing Corporation*, *Haliye*, and *Maroko* is unavailing.

Thill finally argues that the position in the Purification division was not guaranteed to her, but rather that she was still required to apply for the position. ECF No. 53 at 13–

13

14. It is not clear whether the position within the Purification division was guaranteed to Thill, or whether she would have had to apply for the position. *See* ECF No. 51-6 ¶ 16 (Linabery explaining that he "found a role" for Thill in the Purification division that would not require vaccination and "worked towards creating a new role" for her that would maintain Thill's pay and job grade); ECF No. 51-2 at 51 (Linabery texting Thill about the "job we discussed"); ECF No. 51-1 at 144:20–25 (Thill accepting that 3M had "lined up a potential lateral move to a non-customer facing job"); *id.* at 148:3–8 (Thill describing the position in the Purification division as "an opportunity" and "[n]othing for sure"). But even accepting that 3M would have required Thill to apply for the position in the Purification division, the Court still concludes that 3M offered Thill a reasonable accommodation as a matter of law.

As discussed above, a lateral job transfer can constitute a reasonable accommodation. *Kelly Servs.*, 598 F.3d at 1031 n.8. But courts have also held that employers offer a reasonable accommodation when they provide employees with an opportunity to apply for internal positions where the religious conflict can be eliminated. Consider one of the cases cited in *Kelly Services* by the Eighth Circuit: *Bruff*. In that case, a counselor asked to be excused from providing relationship advice to individuals in same-sex relationships, as she believed such counseling contradicted her religious beliefs. *Bruff*, 244 F.3d at 497. In response, the counselor's employer offered the counselor 30 days, and the assistance of its in-house employment counselor, to find another position with the employer where the likelihood of encountering further conflicts with her religious beliefs would be reduced. *Id.* at 501. The Fifth Circuit concluded that the employer's offer to find

14

another position with the employer was a reasonable accommodation as a matter of law. *Id.* The Fifth Circuit emphasized the assistance that the employer had given to the counselor in her job search and noted that the counselor had refused to apply for several open positions with the employer after learning of them. *Id.* at 502–03. The Fifth Circuit highlighted that an "employee has a duty to cooperate in achieving accommodation of his or her religious beliefs, and must be flexible in achieving that end," and observed that the counselor "displayed almost no such cooperation or flexibility." *Id.* at 503.

Nearly the same could be said here. By Thill's own admission, her managers assisted her by "trying to find ways to keep" her at 3M, ECF No. 51-1 at 144:15–19, and to that end, Thill's supervisor had lined up a lateral move to a non-customer facing job where Thill would not have to be vaccinated, ECF No. 51-6 ¶ 16. Rather than even explore that option, Thill dismissed it as not a "good fit." ECF No. 51-2 at 51. Thill, not 3M, is therefore responsible for the consequences of that decision. *See Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993) (holding that giving employee an opportunity to bid on internal jobs that would have accommodated his religious practice was reasonable accommodation, even though employee "chose not to take full advantage of the bidding system").

Other cases reflect a similar fact pattern: an employer offers an employee assistance in finding a new position with the employer that will eliminate the employee's religious conflict, but the employee elects not to take advantage of that assistance. In those cases, courts have determined on summary judgment (or even earlier) that the employer offered a reasonable accommodation as a matter of law. *See Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277 (11th Cir. 2012); *Shelton*, 223 F.3d at 227–28; *Bartholomew*

15

*v. Washington*, 693 F. Supp. 3d 1107, 1114–15 (W.D. Wash. 2023); *LaFreniere v. Spectrum Health Sys., Inc.*, No. 4:23-cv-40066-MRG, 2025 WL 2793761, at *5–6 (D. Mass. Sept. 30, 2025); *EEOC v. Walmart Stores E. LP*, No. 18-cv-804-bbc, 2020 WL 247462, at *5–7 (W.D. Wis. Jan. 16, 2020). This case fits that mold. Because 3M offered a reasonable accommodation to Thill, 3M is entitled to summary judgment.[4] *See Ansonia*, 479 U.S. at 68.

That conclusion makes good sense, for the purpose of Title VII's reasonable accommodation provision is "to foster 'bilateral cooperation' in resolving an employee's religion-work conflict." *Sturgill*, 512 F.3d at 1031 (quoting *Ansonia*, 479 U.S. at 69). In this cooperative spirit, it takes two to tango: the employer must extend a reasonable accommodation, and the employee must, in good faith, "attempt to satisfy [her] needs through means offered by the employer." *Maroko*, 778 F. Supp. 2d at 1001 (citation omitted). 3M held up its end of the bargain by offering to create a new lateral position for Thill that would have eliminated her religious-work conflict and inviting her to accept or apply for that role. ECF No. 51-6 ¶ 16. That "triggered [Thill's] accompanying duty to make a good faith attempt to accommodate her needs through the offered accommodation." *Walden*, 669 F.3d at 1294. Thill failed to comply with this duty, so 3M is entitled to summary judgment.

---

[4]    Because the Court determines that the position in the Purification division was a reasonable accommodation, the Court need not evaluate 3M's alternative argument that its offer for Thill to apply for a medical exemption was another reasonable accommodation.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    3M's Motion for Summary Judgment (ECF No. 48) is **GRANTED**; and

2.    The complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 23, 2026                  *s/Laura M. Provinzino*
                                          Laura M. Provinzino
                                          United States District Judge